Filed 9/29/15  P. v. Pritchard CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVEN LUKE PRITCHARD,<br><br>    Defendant and Appellant. | F068626<br><br>(Super. Ct. No. BF146965A)<br><br>**OPINION** |

-ooOoo-

        APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

        James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Robert C. Nash and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

        Steven Luke Pritchard and his codefendant wife were found sleeping in their sport utility vehicle (SUV).  Inside the SUV were controlled substances and numerous pieces

of stolen property. Defendant was ultimately convicted of burglary, receiving stolen property, and possession of methamphetamine.

On appeal, defendant maintains there is insufficient evidence to establish the required corroboration for the accomplice evidence of the codefendant and, as a result, reversal is required. Defendant also argues there is insufficient evidence to support his burglary conviction and the evidence "failed to establish every essential element of the crime of burglary" in violation of his rights to a fair trial and due process. We will affirm.

**RELEVANT BACKGROUND**[1]

*The burglary*

On February 11, 2013, Jan Blesener left her home on Fall River Place in Bakersfield between 8:00 and 9:00 a.m. All the windows and doors were locked. When she returned about four hours later, her garage door was open. Inside her home, in the master bedroom and bathroom, numerous items were missing. For example, drawers had been removed from a jewelry chest, and jewelry was also missing.

Noticing a double-pane glass door in a bathroom had been broken and her computer was missing from the living room, Blesener contacted police. A report was made and pictures were taken. A police representative lifted fingerprints and took samples of blood stains present. Several hours later, about midnight, Blesener was contacted by Bakersfield police officer David Hamma. Hamma returned some of her missing property on that occasion. Other property was returned later.

*A stop and an investigation*

About 9:50 p.m. on that same date, Officer Hamma was dispatched to the area of White Lane and Gosford Road. He encountered defendant and his wife Tiffany Pritchard[2] parked in defendant's SUV. Methamphetamine was found, and during a

---

[1]Additional factual evidence will be addressed in the discussion where necessary.

[2]Because defendant and Tiffany Pritchard share the same last name, we will refer to her as Tiffany to avoid confusion. No disrespect is intended.

search of the SUV Hamma noted various items strewn about, including dresser drawers, a computer, and jewelry. A search of defendant's person, and right front pants pocket in particular, revealed a baggie containing a gold necklace with a star pendant.

Defendant was arrested and his wife was released after defendant acknowledged the methamphetamine was his. Defendant's SUV and gray Verizon Samsung cell phone were released to Tiffany at his request. Hamma overheard Tiffany tell defendant she would arrange for his bail at Aladdin Bail Bonds.

Meanwhile, Hamma performed a records check and realized some of the property he had seen in the back of defendant's SUV matched the description of property taken from Blesener's home. Because defendant was still at the booking facility, Hamma approached defendant about the stolen property. Hamma then went to Aladdin Bail Bonds; Tiffany was there with defendant's SUV. He noticed she was holding a gray Samsung cell phone, the same type of phone taken from defendant's person and entrusted to her care. Tiffany was taken into custody for possession of stolen property. When Hamma looked at the cell phone, he noted a text message directed to Ruston Berrigan at 11:39 a.m. on February 11, 2013. The message read, "Come open the gate. We just came up."[3]

Defendant's SUV was searched again after Tiffany was arrested,[4] and Hamma found drawers and a desktop computer inside.[5] Tiffany told Hamma she and defendant argued about the fact he had stolen property, and she was injured during that argument.

Hamma then contacted Berrigan. Berrigan acknowledged knowing defendant and Tiffany, but denied any involvement in the burglary. Berrigan never saw defendant or Tiffany on February 11, 2013. He did receive a phone call and a text message from defendant, but he was not at home at the time he received the text message. Berrigan

---

[3] "Just came up" is slang meaning an individual has just stolen something of value.

[4] Tiffany later pled guilty to one count of receiving stolen property in this case.

[5] A laptop computer found in the SUV was identified as belonging to Yang Xie.

indicated a neighbor called him to report people in the area between their shared properties; the neighbor advised it looked as though those people were unloading trash.

Berrigan's home was searched but no stolen property was found inside. Rather, dresser drawers and others items were found outside on Berrigan's property. Berrigan was arrested for an outstanding felony warrant in a separate matter; he was never charged in this case.

Following jury trial, defendant was convicted of violations of burglary (Pen. Code, § 460, subd. (a) [count 1; first degree]), receiving stolen property (*id.*, § 496, subd. (a) [count 3]), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a) [count 4]). He received a total sentence of eight years eight months.

## DISCUSSION

### 1.    Accomplice Evidence

Defendant complains there was insufficient evidence to corroborate the testimony given by accomplice witness Tiffany. For that reason, he contends his conviction must be reversed. The People contend Tiffany's testimony was sufficiently corroborated. We agree with the People.

Penal Code section 1111 provides as follows:

> "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

> "An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

There is no question that accomplice testimony is admissible at trial, even if uncorroborated. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 967.) The California Supreme Court has explained that corroboration is required for accomplice testimony at trial because "such testimony has been legislatively determined never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated." (*Ibid.*)

4.

The corroboration required to support a conviction based in part on accomplice testimony does not have to be shown by proof beyond a reasonable doubt. It need only be slight corroboration that tends to independently connect the defendant to the commission of the charged offense. (*People v. Tewksbury*, *supra*, 15 Cal.3d at pp. 968-969; *People v. Boyer* (2006) 38 Cal.4th 412, 467.)

> "'"Such [corroborative] evidence 'may be slight and entitled to little consideration when standing alone. [Citations.]'" (*People v. Miranda* (1987) 44 Cal.3d 57, 100.) "Corroborating evidence 'must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that [such] evidence be sufficient in itself to establish every element of the offense charged.' [Citation.]" (*People v. Sully* (1991) 53 Cal.3d 1195, 1228.)' ([*People v.*] *Zapien* [(1993) 4 Cal.4th 929], 982.)" (*People v. Boyer*, *supra*, at p. 467.)

The jury was instructed with CALCRIM No. 335. Specifically, it was instructed, in pertinent part, as follows:

> "If the crimes of residential burglary … were committed, then Tiffany Pritchard was an accomplice to those crimes. You may not convict the defendant of residential burglary … based on the statement or testimony of an accomplice alone.
>
> "You may use the statement or testimony of an accomplice to convict the defendant only if, one, the accomplice's statement or testimony is supported by other evidence that you believe; two, that supporting evidence is independent of the accomplice's statement or testimony; and, three, that supporting evidence tends to connect the defendant to the commission of the crime.
>
> "Supporting evidence, however, may be slight. It does not need to be enough by itself to prove that the defendant is guilty of the charged crime, and it does not need to support every fact about which the witness testified.
>
> "On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission. The supporting evidence must tend to connect the defendant to the commission of the crime.
>
> "Any statement or testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it. You should give that statement or

5.

testimony the weight you think it deserves after examining it with care and caution and in light of all the other evidence."

Here, Tiffany's testimony, standing alone, is not sufficient for a conviction. But the corroboration of her accomplice testimony need only be slight, and the other evidence meets that standard. The corroborating evidence here reasonably supports the truthfulness of Tiffany's testimony as discussed below.

Defendant argues the corroborating evidence of the text message on the cell phone is insufficient; he contends more proof was required to prove the cell phone belonged to defendant. We do not agree. First, the text message sent from 661-703-7877 at 11:39 a.m. on February 11, 2013, tends to connect the sender with the commission of a burglary: "Come open the gate. We just came up," a phrase understood to mean something of value had been stolen. Blesener's home—located near Berrigan's property—was burglarized between 9:00 a.m. and 1:00 p.m. on that date. The following evidence tends to show the sender of the text message was defendant: Hamma found the phone on defendant's person, defendant requested Tiffany take possession of his property when he was arrested, including the gray Verizon Samsung cell phone and his SUV, and it appeared Tiffany was still in possession of the phone several hours later when Hamma encountered her again. This corroborating evidence is Hamma's own experiences or observations, contrary to defendant's assertion that "all of the evidence" Hamma testified to "was told to him directly by Tiffany." Moreover, Berrigan testified the text message he received that day came from the same number used to communicate with defendant and Tiffany once previously.

The foregoing evidence does not merely show a burglary was committed or the circumstances thereof. (Pen. Code, § 1111.) Further, the type of corroboration defendant maintains is necessary—phone records, et cetera—is that which would be synonymous with proof beyond a reasonable doubt. And, yet, the law does not require proof beyond a reasonable doubt in this situation; the evidence need only be slight corroboration and need not be shown by proof beyond a reasonable doubt. (*People v. Tewksbury*, *supra*, 15

6.

Cal.3d at pp. 968-969; *People v. Boyer*, *supra*, 38 Cal.4th at p. 467; see *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1177-1178.)

Additionally, Tiffany testified she did not have anything to do with the burglary. That testimony was partially corroborated by Berrigan who also denied any involvement. Specifically, Berrigan testified he did not see either defendant or Tiffany on that date, he was not at home, and he denied going to a home in the Rosedale area that day with Tiffany. "'"'"[I]t is the exclusive province of the … jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'"'"' (*People v. Jackson* (2014) 58 Cal.4th 724, 749.) The jury obviously believed Berrigan, and his testimony corroborated Tiffany's accomplice testimony. Given Tiffany's testimony or statements that defendant admitted to committing the burglary and she had nothing to do with it, and Berrigan's testimony that he was not involved, his testimony amounts to corroborating evidence tending to connect defendant to the commission of the burglary at the Blesener residence. (*People v. Tewksbury*, *supra*, 15 Cal.3d at pp. 968–969; *People v. Boyer*, *supra*, 38 Cal.4th at p. 467; *People v. Samaniego*, *supra*, 176 Cal.App.4th at pp. 1177-1178.)

In conclusion, there is sufficient evidence corroborating the testimony given by Tiffany and tending to connect defendant to the Blesener burglary.

2.      **Sufficiency of the Evidence**

Defendant contends there was insufficient evidence to support his conviction for burglary of the Blesener residence and, relatedly, the evidence failed to establish every element of the crime in violation of his federal constitutional rights. More particularly, defendant argues the corroborating evidence was insufficient because Tiffany's testimony and statements were uncorroborated, and Officer Hamma's evidence is nothing more than speculation.

In assessing a claim of insufficiency of the evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of

solid value upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320; see also *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) If the verdict is supported by substantial evidence, a reviewing court must accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before the judgment of the trial court can be set aside for insufficiency of the evidence, "it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429; see *People v. Conners* (2008) 168 Cal.App.4th 443, 453.)

Here, there is substantial evidence to support defendant's conviction for burglary. As discussed, *ante*, Tiffany's testimony was not the only evidence supporting defendant's

conviction. The record contains sufficient evidence, including the testimony of Hamma and Berrigan, to reasonably justify the jury's findings.

Hamma testified the cell phone he found on defendant's person at the time of his arrest was entrusted to Tiffany, along with defendant's SUV, as Tiffany was not arrested at Hamma's first encounter with the couple. Once Hamma realized the property he had seen inside defendant's SUV matched the description of the missing property from the Blesener residence, Hamma caught up with Tiffany at the bail bond office. Tiffany was in possession of a cell phone that appeared to be the same phone Hamma located on defendant and had given to Tiffany earlier. That same cell phone contained a text message to Berrigan, asking Berrigan to "[o]pen the gate. We just came up," slang terminology for having valuable stolen property. Berrigan testified he received a call from defendant, and the aforementioned text message, but he was not at home at the time. Berrigan also testified he had no connection to the stolen property found on his property near the fence he shared with a neighbor who reported seeing people unloading trash in the area on February 11, 2013, and he did not see either defendant or Tiffany on the day of the Blesener burglary. Additionally, when defendant was arrested, a gold necklace with a star pendant belonging to Jan Blesener was found in his right front pants pocket. This evidence, viewed in the light most favorable to the judgment, is sufficient to support defendant's conviction.

In order to prove the crime of burglary, the People must prove the following, as the jury below was instructed:

> "[T]hat, one, the defendant entered a building; and, two, when he entered a building, he intended to commit theft.

> "To decide whether the defendant intended to commit theft, please refer to the separate instructions that I will give you on those crimes.

> "A burglary was committed if the defendant entered with the intent to commit theft. The defendant does not need to have actually committed theft as long as he entered with the intent to do so.

9.

"The People allege that the defendant intended to commit theft. You may not find the defendant guilty of burglary unless you all agree that he intended to commit one of those crimes at the time of entry. You do not all have to agree on which one of those crimes he intended." (See CALCRIM No. 1700.)

Theft is proven if a perpetrator took possession of property owned by someone else, without the owner's consent, when the property was taken the perpetrator intended to deprive the owner permanently or for an extended period of time, and moved the property and kept it for a period of time.

The jury could have reasonably inferred defendant entered the Blesener residence from the fact Jan Blesener's star pendant necklace was found in his right front pants pocket several hours after the burglary and defendant sent Berrigan the text message, during the limited window within which the burglary actually took place, indicating he and another person had just stolen valuable property; also, Berrigan's home was located near Blesener's residence.

The jury could have also reasonably inferred defendant took possession of Blesener's property because the majority of her property was found in his SUV, and her gold necklace was found in his right front pants pocket. Blesener herself testified she had not given anyone permission to enter her locked home during her absence on February 11, 2013, and she did not even know defendant. Clearly, Blesener's property was taken without her consent. It can be reasonably inferred that where the majority of Blesener's property was found in defendant's SUV some nine hours after the burglary, in a parking lot located at White Lane and Gosford Road, that he had moved the property and intended to deprive Blesener of her property permanently.

We find the foregoing evidence in support of the judgment to be reasonable, credible, and of solid value. (*People v. Rodriguez*, *supra*, 20 Cal.4th at p. 11.) Further, whether all or some of the testimony given by Tiffany, Berrigan, or Hamma was credible was a question for the jury; we do not reweigh credibility determinations. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; see also *People v. D'Arcy* (2010) 48 Cal.4th 257,

10.

293.) Defendant simply cannot overcome the hurdle of establishing it is clear "that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks*, *supra*, 128 Cal.App.3d at p. 429.) Even if we agreed with defendant that the evidence "demonstrates that the Blesener burglary was committed by Tiffany and Ruston Berrigan," and we make no such finding, reversal is not appropriate because the evidence could be reconciled with a contrary finding. (*People v. D'Arcy*, *supra*, at p. 293.)

In sum, the evidence is sufficient to support the jury's finding that defendant was guilty of burglary.

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.